CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
02/26/2018
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **VIRGINIA ALEASE FEARS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 6:16-cv-55 |
| ) | |
| **NANCY A. BERRYHILL, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Virginia Alease Fears ("Fears") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 402(d), 1381–1383f. Specifically, Fears alleges that the ALJ erred by (1) holding a hearing in her absence; (2) failing to itemize her various mental functions when crafting her residual functional capacity ("RFC"); (3) failing to account for her moderate limitations in concentration, persistence, or pace; (4) failing to give more weight to the opinion of consultative examiner Franklin E. Russell, Ph.D.; and (5) failing to consider her obesity in combination with her asthma and left knee ailments. I find that substantial evidence supports the ALJ's decision on all grounds. Accordingly, I **RECOMMEND GRANTING** the Commissioner's motion for summary judgment (Dkt. 14), and **DENYING** Fears's motion for summary judgment (Dkt. 12).

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Fears failed to demonstrate that she was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Fears protectively filed for SSI and DIB on January 3, 2012, claiming that her disability began on November 11, 2011. R. 312–22. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 73, 82, 96, 108. On March 31, 2015, ALJ Marc Mates held an administrative hearing to consider Fears's disability claim. R. 32–43. Fears was incarcerated at the time of the hearing, but appeared through her attorney. R. 34. Vocational expert Gerald K. Wells testified at the hearing. R. 36–41.

On June 26, 2015, the ALJ entered his decision analyzing Fears's claim under the familiar five-step process,[2] and denying Fears's claim for disability. R. 10–24. The ALJ found

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform

2

that Fears suffered from the severe impairments of: "left knee lateral meniscus tear and chondromalacia, diabetes mellitus, hypertension, asthma, obesity, borderline intellectual functioning, mood disorder, and anxiety disorder." R. 13. The ALJ further found that Fears retained the RFC to perform a range of light work, but she is restricted to lifting and carrying ten pounds frequently, lifting and carrying twenty pounds occasionally, standing and/or walking for six hours in an eight-hour workday, and sitting for six hours in an eight-hour workday. R. 15. The ALJ explained that Fears can never climb ladders, scaffolds, or ropes; can never crawl; and can never be exposed to extreme temperatures, wetness, humidity, fumes, odors, dust, gases, poor ventilation, vibration, and hazards (such as unprotected heights or hazardous moving machinery). R. 15–16. The ALJ further found that Fears can occasionally balance and stoop as well as push and pull with her left leg. R. 15. Finally, the ALJ explained that Fears can "perform simple, routine tasks; sustain concentration toward such tasks for 2-hour segments; interact as needed with coworkers/supervisors, with only occasional public contact; and respond appropriately to change in a routine work setting." R. 16.

The ALJ determined that Fears could not return to her past relevant work as a fast food worker, store clerk, and sewing machine operator, but that she could work at jobs that exist in significant numbers in the national economy, such as a cafeteria attendant or a cleaner. R. 22–23. Thus, the ALJ concluded that Fears was not disabled. R. 24. Fears appealed the ALJ's decision to the Appeals Council, but her request for review was denied. R. 1–3. This appeal followed.

## **ANALYSIS**

---

other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

Fears challenges the ALJ's decision on five grounds: (1) the ALJ violated her rights to procedural due process in holding the administrative hearing in her absence; (2) the ALJ failed to conduct a "more detailed assessment" required by SSR 96-8p by itemizing Fears's various mental functions; (3) the ALJ failed to account for Fears's moderate limitations in concentration, persistence, and pace; (4) the ALJ failed to give appropriate weight to Dr. Russell's consultative psychological assessment; and (5) the ALJ failed to consider Fears's obesity in combination with her asthma and left knee ailments.

## I. The Administrative Hearing

Fears first argues that the ALJ violated the Social Security Administration's internal operating guidelines—the HALLEX manual—by proceeding at the hearing while she was in jail.

The HALLEX manual "provides guiding principles, procedural guidelines and information." Parham v. Colvin, No. 3:14cv283, 2015 WL 1649143, at *15 (E.D. Va. Apr. 13, 2015). "[I]nterpretations contained in policy statements, agency manuals and enforcement guidelines lack the force of law." Id. (citing Christensen v. Harris Cnty., 529 U.S. 576, 587 (2000)). An internal claims manual created "for internal use by thousands of SSA employees" is not a regulation, meaning "[i]t has no legal force" and "does not bind the SSA." Schweiker v. Hansen, 450 U.S. 785, 789 (1981). "HALLEX is an internal guidance tool and thus, lacks the force of law." Parham, 2015 WL 1649143, at *15 (citations omitted). Thus, the HALLEX manual gives Fears no basis to challenge the ALJ's decision.

Fears then contends that the ALJ violated her rights under the Due Process Clause of the Fifth Amendment when he determined that she constructively waived her presence at the administrative hearing.

4

The Fifth Amendment prevents any person from being "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. It is well-established that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (citing Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). To satisfy procedural due process, the individual must, at a minimum, receive "notice and an opportunity to be heard." United States v. James Daniel Good Real Prop., 510 U.S. 43, 48 (1993). The individual's due process rights will be violated if the notice is not "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their [case]." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (citation omitted).

Fears first received notice of her administrative hearing on February 9, 2015. R. 270. A second notice was sent on March 17, 2015 notifying her of the administrative hearing. R. 302. Fears's attorney was mailed copies of both notices. R. 275, 303.

Fears was arrested on March 6, 2015, twenty-five days after receiving her first notice and twenty-five days before her hearing. R. 460. Fears remained in jail until April 2, when she was released on bond. Id. Fears's attorney received both notices prior to the administrative hearing and was aware of her incarceration before the hearing began, but neither Fears nor her attorney requested that the ALJ postpone the hearing. R. 34, 275, 303.

Fears had considerable time to request that the ALJ postpone the administrative hearing. But, neither Fears nor her attorney did so. The ALJ sent a show cause order to give Fears an opportunity to provide information about her absence. The ALJ concluded that Fears waived her presence at the administrative hearing, as she did not present good cause for her failure to appear.

5

Fears and her attorney received notice of the hearing, yet neither requested that the administrative hearing be postponed during the twenty-five day period of Fears's incarceration leading up to the date of her administrative hearing. Fears appeared at the administrative hearing through her attorney and had an opportunity to present evidence regarding her claim. As such, I conclude that the ALJ did not violate her procedural due process rights.

## II.     Fears's Mental Impairments

### A.  SSR 96-8p

Fears argues that the ALJ erred by failing to itemize her various mental functions required by SSR 96-8p. When evaluating a claimant's mental RFC, the ALJ is required to conduct "a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listing in 12.00 of the Listing of Impairments." SSR 96-8p, 1996 WL 362207 (S.S.A. July 2, 1996). This requires the ALJ to "express the claimant's capacity in terms of work-related functions, such as the ability to understand, carry out, and remember instructions; use judgment in work-related decisions, respond appropriately to supervision, and deal with changes in a work setting." Rivera v. Astrue, No. CBD–12–1095, 2013 WL 4507081, at *4 (D. Md. Aug. 22, 2013). However, SSR 96-8p does not require the ALJ to "specifically write about the domains of functioning in every narrative opinion issued in mental-impairment claims." Mellon v. Astrue, No. 4:08–2110–MBS, 2009 WL 2777653, at *14 (D.S.C. Aug. 31, 2009). All that is required is that the "ALJ conduct[] a thorough analysis of [the claimant's] medical history [when] determining the appropriate RFC." Lawrence v. Colvin, No. 1:13CV70, 2015 WL 3453331, at *5 (M.D.N.C. May 29, 2015).

Here, the ALJ determined that Fears had the mental RFC to "perform simple, routine tasks; sustain concentration toward such tasks for 2-hour segments; interact as needed with

6

coworkers/supervisors, with only occasional public contact; and respond appropriately to change in a routine work setting." R. 16. The ALJ relied heavily on Fears's function reports to address her moderate limitations with concentration, persistence, and pace. R. 15. In these function reports, Fears indicated she: (1) regularly drives a car; (2) has no problems getting along with "family, friends, neighbors, authority figures, or others"; (3) has never been fired from a job due to issues with getting along with her co-workers or her superiors; (4) can handle both written and spoken instructions well; and (5) can handle changes in routine well. Id.

The ALJ provided a detailed narrative discussion of Fears's medical history which reiterated her history of treatment for mental impairments from November 9, 2011 to February 2, 2015. Fears subjectively complained of suicidal thoughts (R. 744, 1042, 1081) and crying spells (R. 1190). Fears attempted suicide on December 23, 2013. R. 1109. Her objective findings were normal, as she was always found to be alert and oriented with intact memory, judgment, thought, and insight. R. 17–20.

The ALJ satisfied the requirements of SSR 96-8p as the ALJ conducted a thorough analysis of Fears's medical history. A legitimate mental RFC was formulated as a result. Fears's contention that "there is simply not a valid RFC" is without merit. Dkt. No. 13, at 7.

### B. Concentration, Persistence, and Pace

Fears alleges that the ALJ found that she had moderate limitations in concentration, persistence, or pace, but failed to account for the limitations in her RFC.

In Mascio v. Colvin, the Fourth Circuit held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, or pace by restricting the claimant to simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks differs from the ability to stay on task.  Only the latter limitation would account for a claimant's limitation in

concentration, persistence, or pace." 780 F.3d 632, 638 (4th Cir. 2015); see also Sexton v. Colvin, 21 F. Supp. 3d 639, 642–43 (W.D. Va. 2014) (citing Wiederholt v. Barnhart, 121 Fed. App'x 833, 839 (10th Cir. 2005) (holding that a "limitation to simple, unskilled work does not necessarily" accommodate a person's difficulty in concentrating on or persisting in a task, or maintaining the pace required to complete a task)). In Mascio, the Fourth Circuit found that the ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate into a limitation in his RFC. Mascio, 780 F.3d at 638. The court noted, however, that the ALJ may find that the concentration, persistence, or pace limitation would not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. Id.; see also Hutton v. Colvin, No. 2:14-cv-63, 2015 WL 3757204, at *3 (N.D. W. Va. June 16, 2015).

Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. See Mascio, 780 F.3d at 638. The ALJ's responsibility to highlight the evidence of record that supports his conclusion was further emphasized in Monroe v. Colvin, where the court found that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically apply the law to the record. 826 F.3d 176, 189 (4th Cir. 2016).

The Mascio court relied upon Winschel v. Comm'r of Soc. Sec., where the court rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration,

8

persistence, or pace by restricting the claimant to simple, routine tasks or unskilled work. 631 F.3d 1176, 1180 (11th Cir. 2011). However, the Winschel court explained that:

> when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations.

Id. (internal citations omitted). Courts within the Fourth Circuit have come to rely upon Winschel's reasoning to comply with Mascio. See St. Clair v. Colvin, No. 7:13cv571, 2015 WL 5310777, at *7 (W.D. Va. Sept. 11, 2015) (ALJ properly relied upon the opinion of consultative physician that plaintiff's impairment in concentration, persistence, or pace did not prevent him from performing simple, repetitive tasks); Del Vecchio v. Colvin, No. 1:43cv116, 2015 WL 5023857, at * 5 (W.D.N.C. Aug. 25, 2015) (ALJ's reliance upon the opinion of state agency medical consultant that plaintiff could complete simple tasks even with moderate limitations in concentration, persistence, or pace satisfied the explanation necessary to support the RFC limitations); Geisler v. Comm'r Soc. Sec. Admin., No. SAG–14–2857, 2015 WL 4485459, at *5 (D. Md. July 21, 2015) (ALJ properly relied on the opinions of state agency physicians that plaintiff's impairment in concentration, persistence, or pace does not prevent him from performing simple, spoken instructions and simple, routine tasks).

Likewise, in Hutton v. Colvin, the court held that a restriction of "unskilled work" accounted for claimant's limitations with concentration, persistence, or pace where the ALJ examined the claimant's ability to perform daily activities such as paying bills and counting change in the step four analysis, and noted that his treating physicians found that he exhibited

9

good attention, logical thought flow, and good immediate and recent memory. 2015 WL 3757204, at *3–5.  The court found that these reasons constituted an "abundant explanation" for the ALJ's RFC findings regarding the claimant's concentration limitations, and thus there was no error in the ALJ's conclusion that the claimant could perform unskilled work. Id.

Thus, Mascio reiterates the long-held proposition that substantial evidence in the record must support the limitations contained in the RFC and included in the hypothetical question presented to the vocational expert. An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Fears was diagnosed several times with depression and anxiety. See R. 569, 1047, 1076, 1084. From November 23, 2011 to November 24, 2014,[3] Fears complained of symptoms stemming from anxiety and depression multiple times. See R. 563, 744, 969, 1043, 1063, 1073, 1081, 1107, 1190. However, at each of these appointments, Fears's doctors noted that she was alert and oriented with intact memory, judgment, thought, and insight. See id. Fears attempted suicide once during the relevant period and experienced serious but infrequent panic attacks. Nevertheless, she reported that anti-anxiety and antidepressant prescription medications were working well. For example, Fears explained to nurse practitioner Kimberly Collurafici on November 23, 2011 that "the increase in [antidepressant medications] significantly worked." R. 563. Fears informed Geeta Nathan, M.D., on August 25, 2014 that she is "doing much better on her medications [and] denies side effects." R. 1187. The ALJ concluded that Fears "has not

---

[3] The relevant period spans November 11, 2011—Fears's alleged onset of disability—to June 26, 2015—the date the ALJ's decision became final.

generally received the type of medical treatment one would expect for someone alleging totally debility, as her treatment has been fairly limited and conservative overall. She has been treated primarily with medications, which appear to have been relatively effective in controlling her symptoms." R. 20.

Fears stated on her function report that she is able to drive by herself, get along with other people including authority figures and superiors, handle her own finances, handle changes in routine, and follow either written or spoken instructions well. R. 410–13. The ALJ explained these daily activities "are not consistent with allegations of total debility" when rendering his conclusion that Fears's symptoms are not as severe as she alleged. R. 20; see also Dolfax v. Astrue, 7:09-cv-67, 2010 WL 1488116, at *11 (E.D.N.C. Mar. 18, 2010) (finding that activities of daily living are a highly probative factor in determining the credibility of a claimant's allegations (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986))).

The ALJ adequately accounted for Fears's moderate limitations in concentration, persistence, or pace and sufficiently explained why these limitations did not translate into a more restrictive RFC. The ALJ provided a detailed narrative assessment of Fears's medical history, noting her complaints of anxiety and depression with the objective findings at each appointment that she was intact neurologically. No doctor Fears consulted during the relevant period found any deficiencies with her ability to remember, think logically, or exercise proper judgment. The ALJ noted that at almost all of these appointments, Fears's doctors directed her to simply continue her medications, which Fears indicated helped alleviate her symptoms. The ALJ explained that Fears's daily activities such as managing money indicate that she is capable of at least simple, repetitive tasks. R. 22. I conclude that substantial evidence supports the ALJ's

conclusion that Fears's moderate limitations in concentration, persistence, or pace translates into an RFC limiting her to simple, routine tasks. Dkt. 13, at 7.

### III.  Medical Opinion Evidence

Fears contends that the ALJ erred when he rejected the opinion of consultative examiner Franklin E. Russell, Ph.D. Dr. Russell conducted a psychological assessment of Fears at the request of her attorney on March 2, 2015. R. 1196. Dr. Russell stated that Fears spoke to him in "a matter-of-fact and businesslike fashion" throughout. R. 1199. Dr. Russell reported that Fears: (1) had good, clear, spontaneous speech; (2) was "oriented in all spheres"; (3) had poor immediate auditory memory fair recent memory, and good remote memory; (4) had a fair fund of information; (5) had good calculation ability; (6) had fair abstract reasoning; (7) had fair judgment and common sense; and (8) had fair insight. R. 1199–1200. Dr. Russell concluded that:

> Ms. Fears would likely have had difficulty doing any job that required cognitive flexibility, the ability to follow anything other than simple oral instructions, writing skills or working with others. Now Ms. Fears may have difficulty performing even simple and repetitive tasks due to depressed mood, difficulty with focus and concentration and preoccupation with her physical health.

R. 1200–01.

When the ALJ evaluates the opinions of non-treating physicians, the ALJ must weigh three factors: "supportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating evidence, particularly medical signs and laboratory findings; consistency between the opinion and the record as a whole; and specialization in the subject matter of the opinion." Brown v. Comm'r Soc. Sec. Admin, 873 F.3d 251, 268 (4th Cir. 2017) (citing 20 C.F.R. § 404.1527 (c)(3)–(5)). Among non-treating sources, however, more weight is generally given to a source who has examined the claimant than to one who has not. See 20 C.F.R. § 404.1527(c)(1). The ALJ, in evaluating the opinions of treating sources, examining

12

sources, and non-treating, non-examining sources, must explain the conclusions reached and identify the record evidence which supports those conclusions. See Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016). Only then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

The ALJ accorded Dr. Russell's opinion "little weight," stating that the "limitations noted by Dr. Russell are not well supported and are both internally inconsistent and inconsistent with the evidence of record." R. 22. The ALJ first evaluated the supportability of Dr. Russell's opinion, stating that the limitations Dr. Russell attributed to Fears are inconsistent with her daily activities, especially personal finance. The ALJ then explained that treatment notes from the relevant period do not support Dr. Russell's finding that Fears suffers from marked cognitive limitations, as objective findings from Fears's medical appointments reported her to be intact neurologically, albeit depressed and anxious. The ALJ attributed this discrepancy to Dr. Russell's apparent full adoption of Fears's subjective statements concerning the symptoms of her mental impairments. The ALJ found this problematic in light of the fact that Fears was not forthcoming with Dr. Russell during the psychological assessment about her history of drug use, and the ALJ therefore called into question the reliability of the information Fears reported to Dr. Russell. While Dr. Russell is a specialist in psychology, the ALJ reasonably concluded that his opinion was not supported by the objective medical evidence and was inconsistent with the record as a whole. I find that substantial evidence supports the ALJ's decision to give limited weight to Dr. Russell's opinion.

## IV. Obesity

Fears argues that the ALJ erred by failing to consider her obesity in combination with her severe impairments of asthma and her left knee lateral meniscus tear and chondromalacia.

13

The Social Security Regulations define obesity as a "complex, chronic disease characterized by excessive accumulation of body fat." SSR 02-1p, 2002 WL 34686281, at *2 (S.S.A. Sept. 12, 2002). The ALJ is required to consider the combined effects of obesity with other impairments and to consider the effects of obesity at steps two through five of the sequential disability evaluation. Id.; Greenway v. Astrue, No. 6:12-cv-00005, 2013 WL 4929931 at *7 (W.D. Va. Sept. 12, 2013); Barr v. Astrue, No. 5:10cv00074, 2011 WL 3420844, at *6 (W.D. Va. Aug. 4, 2011). There is no requirement in the regulations that the ALJ include a lengthy or precise analysis of obesity in the opinion. Richards v. Astrue, No. 6:11-cv-00017, 2012 WL 5465499, at *6 (W.D. Va. July 5, 2012) (internal citations omitted). Rather, courts have found that the ALJ may rely upon medical records which adequately show a claimant's obesity and adopt the conclusions of doctors who are aware of the claimant's obesity. Id. at *7; see also Martin v. Barnhart, No. 5:10CV00102, 2012 WL 663168, at *5 (W.D. Va. Feb. 29, 2012) (rejecting the claim that the ALJ failed to properly consider obesity where the ALJ discussed the claimant's testimony, took note of the medical opinions of record regarding her weight, and the plaintiff offered no physical impairment which she alleged was exacerbated by her obesity).

To challenge an ALJ's obesity analysis, the claimant must advance additional, obesity-related functional limitations not accounted for by the ALJ in his determination of the claimant's RFC. See Phelps v. Astrue, No. 7:09CV0210, 2010 WL 3632730, at *7 (W.D. Va. Sept. 9, 2010); Matthews v. Astrue, No. 4:08CV00015, 2009 WL 497676, at *4 n.4 (W.D. Va. Feb. 27, 2009). That is, Fears must provide medical evidence establishing functional limitations caused by her obesity that are not addressed in the RFC. See Richards, 2012 WL 5465499 at *7; Barr v. Astrue, No. 510cv00074, 2011 WL 3420844, at *6 (W.D. Va. Aug. 4, 2011) (finding that the

plaintiff's high BMI did not obligate the ALJ to include a more detailed analysis in the RFC determination).

Fears reported on March 2, 2015 that she was 5'3" and 295 pounds. R. 1196. An estimate of her body mass index ("BMI") results in a BMI of 54. See BMI Calculator, Active, https://www.active.com/fitness/calculators/bmi. Under SSR 02-1p, anyone with a BMI of 40 or higher is at "the greatest risk for developing obesity-related impairments." 2002 WL 34686281, at *2.

The ALJ found that Fears's obesity qualified as a severe impairment. R. 13. The ALJ then "considered the effect of [Fears's] obesity in determining whether [her] medically determinable impairments meet or equal any listing, and conclude[d] that the evidence does not support such a finding." R. 14. The ALJ discussed Fears's weight when detailing her extensive medical history, and he accorded some weight to the state agency medical physicians who both diagnosed Fears with obesity and took that impairment into account when determining the applicable RFC. R. 18, 22, 69, 91. Ultimately, the ALJ factored in Fears's obesity when developing her final RFC, as he limited her to light work that does not require her to crawl, push or pull with her left leg more than occasionally, balance or stoop more than occasionally, or climb ladders, ropes, or scaffolds. R. 15.

Fears identified no evidence the ALJ omitted regarding her obesity or the exacerbating effect on her other severe impairments. Fears does not identify specific limitations caused by obesity. Instead, Fears criticizes the ALJ for not providing a detailed analysis of her obesity and its possible effect on her asthma or left knee lateral meniscus tear and chondromalacia. However, the law does not require what Fears demands; the ALJ is tasked only with "considering the effect of obesity during steps two through five of the five-step inquiry." Richards, 2012 WL 5465499 at

15

*6. Here, the ALJ properly considered Fears's obesity during steps two through five and the effect of her obesity on her ability to engage in competitive work. The fact that the ALJ did not explicitly detail his analysis of Fears's obesity is immaterial when he considered all the relevant evidence. See Martin, 2012 WL 663168 at *5. I find that substantial evidence supports the ALJ's analysis concerning Fears's obesity in relation to her other severe impairments.

## CONCLUSION

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence does not support the ALJ's opinion. Accordingly, I conclude that the Commissioner's motion for summary judgment be **GRANTED** and Fears's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Glen E. Conrad, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: February 26, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge