CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
03/29/2018
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| VIRGINIA FEARS,<br><br>*Plaintiff*,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>*Defendant*. | CASE NO. 6:16-cv-00055<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on the parties' cross motions for summary judgment (dkts. 12, 14), the Report and Recommendation ("R&R") of Magistrate Judge Robert S. Ballou (dkt. 16), and Plaintiff's Objections to the R&R (dkt. 17). This Court referred the case to Judge Ballou for proposed findings of fact and a recommended disposition. Judge Ballou filed his R&R, recommending the Court deny Plaintiff's motion and grant the Commissioner's motion. After reviewing the R&R and the Objections, the Court will remand the case for further proceedings applying the correct legal standards, as discussed below.

I. STANDARD OF REVIEW

"When examining an SSA disability determination, a reviewing court is required to uphold the determination when an ALJ has applied the correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012). Plaintiff does not object to the ALJ's factual findings, but contends the ALJ made two legal errors. The Court reviews those issues *de novo*. *Id*.

II. ANALYSIS

Because Plaintiff does not object to the R&R's recitation of the claim history in this case, the Court incorporates that portion of the R&R into this opinion. (*See* R&R at 2–3). By way of

1

summary, Plaintiff applied for (and was denied) supplemental security income and disability insurance benefits. Importantly, Plaintiff was unable to attend the hearing on her application because she was incarcerated. R34. Her counsel did attend that hearing. After the hearing, the ALJ determined Plaintiff was not disabled, and therefore not entitled to the benefits. The ALJ found Plaintiff suffered from the following severe impairments: a "left knee lateral meniscus tear and chondromalacia, diabetes mellitus, hypertension, asthma, obesity, borderline intellectual functioning, mood disorder, and anxiety disorder." R13. In light of those impairments, the ALJ concluded Plaintiff would be unable to return to her previous job, but that she retained the ability to work at other jobs. R22–23. Plaintiff challenged the ALJ's conclusion on five grounds. (Dkt. 13). Judge Ballou's R&R recommended overruling all of Plaintiff's challenges. (Dkt. 16). Plaintiff now raises two objections to the R&R, both of which are addressed below.

**A. The ALJ failed to conduct the "more detailed assessment" required by SSR 96-8p**.

Consideration of Plaintiff's application required the ALJ to ask five questions:

[T]he ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.

*Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Plaintiff alleges the ALJ made a legal error that affected his analysis at Steps Four and Five. Specifically, before answering these last two questions, the ALJ was required to determine the claimant's Residual Functional Capacity, or "RFC." RFC is defined as "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8P, 1996 WL 374184 at *1 (S.S.A. July 2, 1996); *see also Mascio*, 780 F.3d at 635 (defining RFC as "the most the claimant can still do despite physical and mental limitations that affect her ability to work.").

2

A mistaken determination of an individual's RFC will affect the later considerations about whether that claimant is able to perform certain types of work. *See Mascio*, 780 F.3d at 636 ("ALJs clearly use the residual functional capacity finding at steps four and five.").

"Social Security Ruling 96–8p . . . explains how adjudicators should assess residual functional capacity." *Mascio*, 780 F.3d at 636. This ruling specifically states that the RFC assessment of a claimant's mental capacity is different than the previous assessments made at Steps Two and Three. *See* SSR 96-8P, 1996 WL 374184 at *4 (S.S.A. July 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). Compared with these earlier assessments, "[t]he mental RFC assessment used at steps 4 and 5 . . . process requires a more detailed assessment by itemizing various functions . . . ." *Id*.

The "various functions" to be considered all relate to the claimant's ability to work. They include the abilities to: "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8P, 1996 WL 374184 at *6; *see also* 20 C.F.R. § 416.945(c) ("A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.").

Generally, remand is appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record," although failure to consider each of those functions may not require remand if the unmentioned functions are not

3

relevant or contested. *Mascio*, 780 F.3d at 636 ("[R]emand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'"). Remand is also appropriate when the assessment does not "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." SSR 96–8p, 1996 WL 374184 at *7. Without such a discussion, meaningful judicial review is impossible. *Mascio*, 780 F.3d at 636.

The Court finds the ALJ erred by insufficiently considering Plaintiff's mental impairments in coming to a RFC determination. The ALJ did, at Step Three, address whether Plaintiff's mental impairments satisfied the criteria set out in the listed impairments. However, he explicitly stated this determination was separate from the RFC determination that he was also required to perform. *See* R15 ("The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions . . . ."). The ALJ never went on to perform the "more detailed" assessment, at least not in a way that complies with the pertinent regulations.

The ALJ concluded Plaintiff had the mental RFC to "perform simple, routine tasks; sustain concentration toward such tasks for 2-hour segments; interact as needed with coworkers/supervisors, with only occasional public contact; and respond appropriately to change[s] in a routine work setting." R16. This assessment does address some of the functions mentioned in SSR 96-8P. *See* 1996 WL 374184 at *6. The ALJ also summarized Plaintiff's health history. R16–22. And some of this history touched on Plaintiff's mental health impairments that may have limited her RFC. *See, e.g.,* R16 ("She also asserted that she was unable to pay attention for long periods."), R17 ("She was alert / oriented and had intact memory, judgment, thought, and insight."), R19 ("An August 22, 2013 Mental Health Appraisal

4

Form from Blue Ridge Regional Jail Authority . . . states that claimant denied any suicidal or homicidal ideation."), *id.* ("A January 2, 2014 assessment from Southside Community Services Board . . . states that claimant complained of suicidal ideation. She was diagnosed with major depressive disorder (recurrent, moderate) and mood disorder (not otherwise specified[)] . . . ."). But there is no "narrative discussion" connecting the conclusions about the different functions to Plaintiff's mental health history. SSR 96-8P, 1996 WL 374184 at *7.

The ALJ did note that Dr. Russell diagnosed multiple serious mental disorders and opined claimant would have trouble with various work-related functions. R21–22. The ALJ discounted this testimony as "not well supported and . . . both internally inconsistent and inconsistent with the evidence of the record." R22. But the ALJ never went on to affirmatively note what specific evidence led to his RFC determination. Instead, the ALJ's penultimate sentence of this section states: "The undersigned, however, has included additional limitations in claimant's residual functional capacity (particularly mental limitations) in light of the evidence of [the] record as a whole." R22. This catchall falls short of "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 374184 at *7; *Mascio*, 780 F.3d at 636.[1]

---

[1] Judge Ballou's conclusion to the contrary relied on function reports the ALJ considered as part of his Step Three determination about whether Plaintiff's impairments satisfied the listed impairments. This Court respectfully disagrees with his conclusion that this consideration also satisfies the RFC determination requirements. *See* SSR 96-8P, 1996 WL 374184 at *4 ("The mental RFC assessment used at steps 4 and 5 . . . process requires a more detailed assessment by itemizing various functions . . . ."). Judge Ballou also relied on the ALJ's extensive summary of Plaintiff's mental health history. Again, this Court respectfully disagrees that this summary was sufficient because this summary was never connected to the ALJ's conclusion (except through his reference "the evidence of [the] record as a whole.").

Accordingly, the case will be remanded to the Commissioner for further proceedings in accordance with this opinion, *Mascio*, and SSR 96-8P. The scope of those proceedings, however, will be shaped by Plaintiff's second objection, which the Court turns to now.[2]

**B. The ALJ improperly found Claimant waived her right to be present and testify at her hearing.**

Plaintiff was not present at her hearing, and she argues the ALJ committed legal error by finding Plaintiff waived her right to be present at the hearing. Plaintiff's first notice of her hearing was sent on February 9, 2015. R270. She was arrested and incarcerated on March 6, 2015. R460. A second notice was sent on March 17, 2015. R302. The hearing itself took place on March 31, 2015. R34. Plaintiff was still incarcerated at this point. *Id*. Her attorney attended the hearing on her behalf and told the ALJ that Plaintiff was incarcerated. *Id.* The ALJ proceeded with the hearing and issued a show cause order afterwards. R308. On April 20, 2015, Plaintiff's counsel responded with Plaintiff's updated address. R307. The ALJ found there was not good cause for Plaintiff's failure to appear and that she had waived her right to appear. R10. In particular, the ALJ noted Plaintiff was arrested on March 6, 2015, but made no efforts to inform the ALJ or postpone the hearing before the March 31, 2015 hearing date. *Id.*

Plaintiff argues this was a violation of both due process and the governing regulations. Because the Court agrees the ALJ violated the relevant regulations, the Court does not address Plaintiff's constitutional argument. Plaintiff's motion for summary judgment, and accordingly Judge Ballou's R&R, focused on whether the ALJ violated an internal Social Security

---

[2] "When a Federal court remands a case to the Commissioner for further consideration, the Appeals Council, acting on behalf of the Commissioner, may make a decision, or it may remand the case to an administrative law judge with instructions to take action and issue a decision or return the case to the Appeals Council with a recommended decision." 20 C.F.R. § 404.983. Because the Appeals Council could address the first objection without ordering a new hearing, Plaintiff's request for a new hearing is not mooted by the above relief and so is addressed below.

Administration manual called "HALLEX." However, for the first time in her Objections, Plaintiff alleged the Commissioner violated SSR 79-19.[3] The Court finds for Plaintiff on this theory and so does not address the separate question of what deference it should give to HALLEX. *See United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992) ("We believe that as part of its obligation to determine *de novo* any issue to which proper objection is made, a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate.").

SSR 79-19 provides specific waiver requirements: namely that any waiver be in writing and thoroughly explained to the claimant. *See Stoner v. Sec'y of Health & Human Servs.*, 837 F.2d 759, 761 (6th Cir. 1988) (finding waiver by counsel at hearing where claimant was not present was insufficient); *Mitchell v. Berryhill*, No. 8:16-CV-1905-T-JRK, 2017 WL 4054509, at *5 (M.D. Fla. Sept. 14, 2017) (applying SSR 79-19 more recently). This Court's sister district has relied on this rule in holding that "[a] claimant's failure to appear at a hearing, even when counsel appears on his behalf, does not alone act as a waiver of a claimant's right to appear." *Stockonis v. Comm'r of Soc. Sec.*, No. 2:10CV459, 2012 WL 527368, at *9 (E.D. Va. Jan. 11, 2012), *report and recommendation adopted*, No. 2:10CV459, 2012 WL 527362 (E.D. Va. Feb. 15, 2012). No such written waiver occurred here.[4] In light of the potential for prejudice,

---

[3] Plaintiff's brief actually refers to SSR 79-10, 1979 WL 15555 (S.S.A. 1979). While that ruling is not relevant, Plaintiff appears to be referencing SSR 79-19, 1979 WL 15541 (S.S.A. 1979), which for the reasons discussed above is relevant.

[4] The Commissioner has not responded to this argument; her summary judgment briefing responds only to the HALLEX argument and she did not respond to Plaintiff's Objections. While the Court is aware of other regulations that may allow the Commissioner to reach similar results, *see, e.g.,* 20 C.F.R. § 404.936(g) (setting out factors to consider in determining whether there is good cause to grant a request to change time of hearing), it is unclear whether the Commissioner followed those regulations either. *See* 20 C.F.R. § 404.938(c) ("If you or your representative do not acknowledge receipt of the notice of hearing, we will attempt to contact

specifically the ALJ's determination that some of Plaintiff's statements were not credible, the Court will remand the case for a new hearing that satisfies the pertinent regulations.

### III. Conclusion

After undertaking a *de novo* review of those portions of the R&R to which Plaintiff objected, the Court concludes the ALJ did not apply the correct legal standards. The Court will enter an order adopting only the unobjected to portions of the R&R (dkt. 16), granting Plaintiff's Motion for Summary Judgment (dkt. 16), denying the Commissioner's Motion for Summary Judgment (dkt. 15), and remanding to the Commissioner for further proceedings in accordance with this opinion.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record, and to United States Magistrate Judge Robert S. Ballou.

Entered this __29th__ day of March, 2018.

*/s/ Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

you for an explanation."). The Court will not venture beyond the parties' arguments into this regulatory thicket.